UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY SMITH,

       Plaintiff,   Case No. 2:16-cv-13700
                          District Judge Victoria A. Roberts
v.   Magistrate Judge Anthony P. Patti

CORPORATION FOR NATIONAL
AND COMMUNITY SERVICE,

       Defendant.

_____/

# REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (DE 2)

**I.   RECOMMENDATION**: The Court should grant Defendant's motion to dismiss because Plaintiff has failed to state a claim upon which relief can be granted. In the alternative, Defendant is entitled to summary judgment because Plaintiff has failed to exhaust her administrative remedies.

**II.   REPORT**

    **A.   Background**

        **1.   Factual Background**

Plaintiff, Tracy Smith, who is proceeding without the assistance of counsel, initiated this action in Genesee County on October 5, 2016 and Defendant timely

removed it to this Court on October 18, 2016. (DE 1.) For the purposes of this motion to dismiss, I will accept the allegations in Plaintiff's complaint as true.

According to her complaint, Plaintiff participated as an AmeriCorps Volunteer in Service to America ("VISTA") program and served for four full terms. She was employed in the program through the Corporation for National and Community Service ("CNCS" or Defendant). On her fifth term, she was hired to serve at Brownell STEM Academy and Holmes STEM Academy in Flint, Michigan and began work on August 17, 2015. Kerry Downs, the community school director at both academies, served as Plaintiff's supervisor, although Plaintiff had previously been told that she would be supervised by Jennifer McCardle and Jaime Lee from the United Way of Genesee County. Ms. Downs was paid by the Crim Fitness Foundation to oversee the VISTA volunteers.

Plaintiff's responsibilities centered around informing parents of the tutoring programs offered by the school and enrolling their children when necessary, which included making calls, attending events, making flyers, and speaking at meetings. Although it was not part of her assigned duties, she was also required, at the direction of Ms. Downs, to help with cleanup, work in the gardens, and painting.

Plaintiff felt that Ms. Downs "was not a very honest individual," who seemed to "dislike" her. (DE 1-1 at 4.) Downs reported Plaintiff's "performance" to Ms. McCardle, which led to a dismissal from her position on November 13,

2015.  The pleadings suggest that CNCS was lied to by Ms. Downs, who allegedly "fabricate[d] stories about an individual" she "did not like[,]" as "it did not make sense for [CNCS] to terminate [Plaintiff]." (DE 1-1 at 3.)  CNCS placed her on administrative leave with pay until December 7, 2015, with the opportunity to seek another work site in the interim. However, Plaintiff alleges that, "This was not doing me a favor[,]" as "I had no success finding somewhere to give my services to" in that time period and was dismissed from the program. (Id. at 4.)  She also complains that United Way could have helped her if it "wanted to" and "could have contacted" CNCS to help her get re-employed. (Id. at 5.)

Plaintiff asserts that she was treated unequally because of her race.  She attempted to complain about the issue to the Crim Fitness Foundation, the United Way Worldwide, the United Way of Genesee County, and the Michigan Department of Civil rights, all to no avail.  (Id. at 6.)  She contends that she suffered mental distress as a result of the incident and asks for a declaration deeming her "as successfully completing the AmeriCorps Vista program," and damages in excess of $100,000.  (Id. at 6-7.)

### 2. The Instant Motion

Defendant filed the instant motion to dismiss or for summary judgment on November 8, 2016, asserting that Plaintiff's complaint should be dismissed for failing to plead subject matter jurisdiction and for failure to state a claim upon

which relief can be granted.  (DE 2.)  In the alternative, Defendant argues that it is entitled to summary judgment because Plaintiff has failed to exhaust her administrative remedies.

Plaintiff opposes the motion.  She argues that CNCS should not have fired her because her termination "did not make sense." (*See* DE 1-1 at 3.)  She also asserts that, because of Defendant's location in Nashville, Tennessee, it "had no idea what took place" in Flint, Michigan.  (DE 5 at 6-7.)  She reiterates her allegation that she "complained of racism which CNCS was aware of" and was "wrongfully terminated due to racism."  (Id. at 7.)

This matter came before me for a hearing on June 12, 2017.  Jennifer Newby, Assistant United States Attorney, appeared on behalf of Defendant and Plaintiff, Tracey Smith, appeared on behalf of herself.

### B. Standard

To determine whether the Court has subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court must "take the allegations of the complaint as true[.]"  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  The plaintiff has the burden of proving jurisdiction in order to survive the motion.  *3D Systems, Inc.v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 802 (E.D. Mich. 2008).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F. 3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

5

### C. Discussion

### 1. Plaintiff's complaint is not barred by sovereign immunity.

The purpose of VISTA is to create a "program of full-time volunteer service" intended to "strengthen and supplement efforts to eliminate and alleviate poverty and poverty-related problems" by enabling Americans to "perform meaningful and constructive volunteer service." 42 U.S.C. § 4951. CNCS is the government corporation created to "administer the programs established under the national service laws." 42 U.S.C. § 12651. A "government corporation" is one that is "owned or controlled by the Government of the United States[.]" 5 U.S.C. § 103. As part of its responsibilities, CNCS assigns volunteers to work in public or non-profit private organizations. 42 U.S.C. § 4953.

Defendant argues that Plaintiff's complaint is defective because it fails to allege a waiver of sovereign immunity. Plaintiff does not address this issue in her response.

As explained by the Sixth Circuit:

> The doctrine of sovereign immunity serves as a bar to suit against the United States unless the government has explicitly waived sovereign immunity. A waiver of sovereign immunity must be clear, express, and unambiguous; it cannot be implied from vague language.

*United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1325 (6th Cir.1993) (internal citations and quotations omitted). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or

officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). Here, Plaintiff does not allege a waiver of sovereign immunity in her complaint. However, CNCS has waived sovereign immunity pursuant to 42 U.S.C. § 5057(b), as conceded by Defendant at oral argument. Reading the complaint in the light most favorable to this *pro se* Plaintiff, I recommend that the Court not dismiss on this technical basis, as it could be cured by a simple amendment to the pleadings. In any case, in light of the statutory waiver of immunity and the concessions made by Defendant at oral argument, I am satisfied that this Court has subject matter jurisdiction to consider this case on the merits.

>    **2.    Plaintiff's complaint fails to state a claim upon which relief can be granted.**

A VISTA volunteer "shall not be assigned to any project program without the express approval and consent of such project or program." 42 U.S.C. 4953(b)(5)(D). Further, the regulations governing CNCS set out a procedure by which the head of a sponsoring organization may request that a VISTA volunteer be removed from service, which provides as follows:

>    (a) The head of a sponsoring organization, or his or her designee, may request that CNCS remove a VISTA assigned to its project. Any such request must be submitted in writing to the appropriate State Program Director and should state the reasons for the request.
>
>    (b) The State Program Director *may*, *at his or her discretion*, attempt to resolve the situation with the sponsor so that an alternative solution

> other than removal of the VISTA from the project assignment is reached.
>
> (c) When an alternative solution, as referenced in paragraph (b) of this section, is not sought, or is not reached within a reasonable time period, the State Program Director *shall* remove the VISTA from the project.

45 C.F.R. § 2556.410 (emphasis added).

Here, Plaintiff was provided with a letter from Robin R. Corindo on behalf of CNCS dated November 19, 2015, which indicated that her AmeriCorps sponsor had asked for her removal from the project and CNCS had honored the request. The letter stated that the reasons for the removal request were Plaintiff's "failure to meet the service hour requirement and communication challenges with partnering site staff members." (DE 2-4.)[1] It informed Plaintiff that she was being placed on paid Administrative Hold and could be reinstated to a position by securing another project on or before December 7, 2015. The letter warned that Plaintiff's failure to secure another assignment by that date would result in her termination.

During the June 12, 2017 hearing on this matter, Plaintiff explained that she believed CNCS had been "manipulated" into terminating her employment by

---

[1] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the documents attached to Defendant's motion so long as they are "referred to in a plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co. Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Here, Plaintiff refers directly to the document, stating that she was placed on administrative leave "with pay until December 7, 2015 by CNCS. I was also given the opportunity to seek [] another site to serve[] my community by December 7, 2015." (DE 1-1 at 4.) She also attaches it as an exhibit to her response brief. (DE 5 at 9-10, Pg ID 55-56.)

United Way of Genesee County and Crim Fitness. She acknowledged that Ms. Downs, the individual who she alleges engaged in discriminatory conduct, was employed by Crim Fitness and not CNCS. She noted multiple times that she did not want to have to sue CNCS and would be willing to drop the instant action if CNCS could somehow put the responsibility back on the United Way of Genesee County and Crim Fitness, for example, by suing those entities on her behalf or seeking indemnity. She conceded that CNCS could not have forced her sponsoring organization to re-hire her, and that 45 C.F.R. § 2556.410 indicates that CNCS "shall" remove a volunteer if the head of a sponsoring organization asks it to do so. She reiterated that Ms. Downs was responsible for the discriminatory conduct, but took issue that CNCS ultimately terminated her from the program.

CNCS is apparently not the party Plaintiff wishes to sue, and she seems to realize that the alleged discriminator was not its employee or agent. This is made even clearer by the fact that she initially attempted to sue the United Way of Genesee County and the United Way Worldwide in state circuit court. She provided to this Court, unprompted, a transcript of her summary judgment hearing in that case, in which she told the state court judge in open court:

> I can't fault them CNCS, the national—what is it, it's a Community National Americorp something. I can't fault them for me being terminated. In fact I called them and talked to them about this situation. It's actually the United Way's responsible for that.

9

(DE 16 at 11.)[2]

Her complaint also makes clear that she cannot fault CNCS for the allegedly discriminatory behavior she experienced. The only discriminatory behavior described in her complaint is attributed to Ms. Downs, who she describes as "not a very honest individual" who "was compensated through the Crim Fitness Foundation." (DE 1-1 at 3-4.) She contends that "it did not make sense" for CNCS to terminate her, but does not allege any discriminatory conduct on its part. (Id.)

In fact, the only potentially discriminatory conduct she attributes to CNCS is the assertion in her complaint that it failed to conduct an investigation into her allegations of Ms. Downs' racial discrimination. She does not, however, indicate why it was required to do so or what impact it would have had, given the fact that the regulations do not allow CNCS to force a sponsoring organization to continue to employ an individual who the sponsoring organization wishes to terminate. At the hearing, she took issue with the fact that CNCS did not direct her to other open positions. When confronted with the November 19, 2015 letter she received from CNCS, which referred her to the "online My AmeriCorps Portal for listings of

---

[2] The Court takes judicial notice of the circuit court argument. *See, e.g., Vushaj v. United States*, No. 05-cv-74142, 2007 WL 2814998, at *3 (E.D. Mich. Sept. 25, 2007). It is further noted that Plaintiff introduced the state court hearing transcript into this Court's record by unilaterally filing her "Response to Telephone Conference" (DE 16), to which she attached it.

VISTA positions," she noted that she should have been provided a web address for the portal.[3] However, she does not allege, either in response to the motion or in her complaint, that CNCS engaged in any discriminatory conduct or terminated her as a result of the same.

Finally, Plaintiff cannot overcome the fact, which she concedes in her complaint, that CNCS terminated her from the program for failing to find another site in which to serve as a volunteer, and not for a discriminatory purpose. She was placed on paid administrative leave from the program, after she was let go from the United Way of Genesee County site as a result of the allegedly discriminatory conduct by Kerry Downs. (DE 1-1 at 4.) She notes in her complaint that CNCS gave her until December 7, 2015 to find another position and did not terminate her until she failed to do so. (Id. at 4-5.) Accordingly, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted.

---

[3] When asked about her diligence in finding another placement by accessing the AmeriCorps portal, Plaintiff replied, "No, I didn't Google it." As noted on the record, the Court was able to access the website from the bench within a matter of seconds using a simple web search of the terms "AmeriCorps Portal."

### 3. In the alternative, Defendant is entitled to a grant of summary judgment because Plaintiff failed to exhaust her administrative remedies.

#### a. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### b.    Exhaustion under 45 C.F.R. § 1225

The Domestic Volunteer Service Act of 1973 ("DVSA"), 42 U.S.C. § 4951, *et seq.*, provides the authority for CNCS and the VISTA program. The DVSA prohibits discrimination against VISTA volunteers, and sets forth an administrative remedy process required to be followed before plaintiffs can file complaints in court. 42 U.S.C. 5057 and 45 C.F.R Part 1225. Specifically, a VISTA volunteer alleging discrimination must first address this issue with the CNCS Office of Civil Rights and Inclusiveness ("OCRI") "within 30 days of the alleged discrimination,"

thereby beginning the pre-complaint process. 45 C.F.R. 1225.8. When a volunteer notifies the OCRI of the "pre-complaint," he or she is assigned a "Counselor," who will work with that person to obtain an informal resolution of the matter. If the parties cannot reach an informal resolution the Counselor must notify the volunteer, who then has 15 days in which to file an administrative complaint with the OCRI. Id. A VISTA volunteer may then file a complaint in court within 30 days of a final agency action or, if no final agency action is reached, within 180 days of filing the administrative complaint with OCRI. 45 C.F.R. § 1225.21.

Plaintiff does not argue that she engaged in any of these administrative processes and provides no evidence of having done so. During oral arguments, she asserted that she was *unaware* of the entire administrative process. Her vague allegations that she "felt [she] had been racially discriminated against . . . due to unequal treatment[,]" that she "timely expressed her feelings [to an unidentified individual] and was terminated[,]" and that CNCS informed her that it "would do an investigation of [her] situation" do not demonstrate exhaustion of her administrative remedies. (DE 1-1 at 5-6.) Moreover, Defendant provides the affidavit of Carolyn Thompson, the Equal Employment Opportunity Specialist for OCRI. She attests that Plaintiff has never engaged in the pre-complaint or complaint process with OCRI. (DE 2-5 at ¶¶ 4-5.) Plaintiff was required to engage in this administrative process before filing her complaint in court. *See*

14

*Mitchell v. Chapman*, 343 F.3d 811, 819-820 (6th Cir. 2003); *Cameron v. Wofford*, 955 F. Supp. 1319, 1324 (D. Kan 1997) (granting summary judgment to CNCS where a VISTA volunteer failed to exhaust her administrative remedies). Accordingly, even if the Court determines that Plaintiff has stated a claim upon which relief can be granted, I recommend that summary judgment be granted to Defendant because Plaintiff has failed to exhaust her administrative remedies.

### III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 14, 2017
s/Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on June 14, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti